**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**ABEL MATEO SOLIS et al.,**

                    **Plaintiffs,**          **19cv4230 (JGK)**

        **- against -**                **MEMORANDUM OPINION &**
                                 **ORDER**
**ZEP LLC et al.,**

                    **Defendants.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiffs Abel Mateo Solis ("Solis"), Eliseo Chavez
San Juan ("Chavez"), and Jose Ortiz Garcia ("Ortiz") bring this
collective action under the Fair Labor Standards Act of 1938
("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law
("NYLL"), §§ 190 et seq. and 650 et seq., against the entity
defendants ZEP LLC d/b/a Zucchero E Pomodori, 1431 Restaurant,
Inc. d/b/a Zep (collectively "Zep"), and the individual
defendants Eric Alam, Sayem Islam, Sam Sahir, Nozrul Hoque, and
Tarek Alam. The defendants now move to compel arbitration
pursuant to arbitration agreements purportedly entered into
between the plaintiffs and the defendants. In the alternative,
the defendants 1431 Restaurant, Inc. and Tarek Alam move to
dismiss claims brought against them by Chavez and Ortiz pursuant
to Federal Rule of Civil Procedure 12(b)(6).

On January 24, 2020, the Court held an evidentiary hearing
to resolve questions of fact necessary to decide the motions to

1

compel arbitration. More specifically, the Court directed the parties to present evidence that would address whether, when, in what language, and under what circumstances each of the plaintiffs reviewed and signed the purported arbitration agreements. Having considered the evidence introduced at the evidentiary hearing and having assessed the credibility of the witnesses – the three plaintiffs, the defendant Sayem Islam, and non-party witness Carlos Quizhbi – the Court **denies** the motions to compel arbitration.

Having denied the motions to compel arbitration, the Court **grants without prejudice** the motion to dismiss.

## I.

The following facts relevant to decide the current motions are drawn from the Amended Complaint, exhibits and declarations submitted in this case, and the evidence presented at the evidentiary hearing.[1]

## A.

The plaintiffs are former employees of Zep who were ostensibly employed as delivery workers, but who were allegedly

---

[1] At the evidentiary hearing, the parties waived their right to a jury trial on the question whether the parties formed valid arbitration agreements. Therefore, the Court acts as finder of fact on disputed issues concerning the making of the purported arbitration agreements. See 9 U.S.C. § 4. For purposes of deciding the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in the Amended Complaint as true, but otherwise does not look outside the four corners of the Amended Complaint and documents incorporated by reference in the Amended Complaint. In particular, the Court will not consider the evidence introduced at the evidentiary hearing when resolving the motion to dismiss.

employed for parts of the regular workday performing non-tipped duties such as cleaning, preparing cheese and other foods, cutting bread, and washing dishes. Am. Compl. ¶¶ 1, 4-5.

The individual defendants, Eric Alam, Tarek Alam, Sayem Islam, Sam Sahir, and Nozrul Hoque, are alleged to be joint owners of the defendant entities and to exercise substantial control over the employment policies of the defendant entities and the plaintiffs' former working conditions. Id. at ¶¶ 34-37. Alternatively, the plaintiffs allege that the individual defendants constituted a single employer of the plaintiffs. Id. at ¶ 39. The plaintiffs allege that the individual defendants operated the defendant entities as alter egos of themselves. Id. at ¶ 40. The plaintiffs further allege that the two entity defendants, ZEP LLC and 1431 Restaurant, Inc., maintain their principal places of business at 1435 Second Avenue, New York, New York 10021. Id. at ¶¶ 27-28.

When working at Zep, the plaintiffs allegedly worked in excess of forty hours per week and without the appropriate minimum wage, overtime, and spread of hours compensation as required under the FLSA and the NYLL. Id. at ¶¶ 6-13, 72, 97, 126. The plaintiffs allege that the defendants' violations of the FLSA and the NYLL were willful. Id. at ¶¶ 141, 144, 148, 150, 154, 161, 165, 170, 174, 178.

**B.**

According to the defendants, the plaintiffs signed arbitration agreements that cover the plaintiffs' FLSA and NYLL claims in this case. The agreements purport to subject to mandatory arbitration "all grievances, disputes, claims, or causes of action (collectively, 'claims') that otherwise could be brought in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of or relating to Employee's employment with the Employer and the termination thereof, including claims Employee may have against the employer or against its officers, directors, supervisors, managers, employees, or agents in their capacity as such or otherwise, or that the Employer may have against Employee." Dkt. No. 41, Exs. B-D. As relevant, the arbitration agreements purport to apply to "claims for violation of any federal, state, local or other governmental law, statute, regulation, or ordinance, including, . . . the Fair Labor Standards Act, as amended, . . . [and] the New York Labor Law[.]" Id. The agreements also state that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of dispute between the parties." Id.

These agreements were provided to the plaintiffs in English without Spanish translations. Tr. 30. One of Zep's putative owners, Sayem Islam, testified that he believed that all the plaintiffs understood some English, although not completely fluent, and he also testified that the plaintiffs were able to read and understand some English that allowed them to carry out deliveries for the restaurant. Tr. 30-31. Islam testified it was the usual practice to provide the agreements to the employees to be signed in the kitchen of the restaurant every January. Tr. 24, 32.

**1.**

The plaintiff Abel Mateo Solis was employed by the defendants, ostensibly as a delivery worker, from approximately 2008 until on or about April 2019. Am. Compl. ¶ 46.

A purported arbitration agreement exists between Solis and the defendants dated January 1, 2016 that appears to bear the signatures of Solis and Sayem Islam. Dkt. No. 41, Ex. B. Islam testified that Solis signed the document along with other employees while in the Zep kitchen. Tr. 8-9. Carlos Quizhbi, who was employed by Zep as a chef, testified that Solis signed the agreement in the kitchen and that although Quizhbi "didn't see [Solis] signed that, but he does. Everybody does." Tr. 37. Solis stated in a sworn affidavit and at the evidentiary hearing that

he had never signed the arbitration agreement and that the first time he ever saw the document was when his lawyer showed it to him during this litigation. Dkt. No. 31-2; Tr. 50. Solis testified credibly that his native language is Spanish, that he only speaks a little English and cannot read or write in English. Tr. 43.

**2.**

The plaintiff Jose Ortiz Garcia was employed by the defendants from approximately November 2016 until April 28, 2019, ostensibly as a delivery worker. Am. Compl. ¶ 100.

A purported arbitration agreement exists dated February 1, 2018 that appears to bear the signatures of Ortiz and Islam. Dkt. No. 41, Ex. C. Islam testified that Ortiz did not ask any questions when he signed the agreement, and Islam stated that Ortiz was given an opportunity to take the agreement home with him. Tr. 13-14. On cross examination, Islam initially testified that Ortiz had signed the document "one or two weeks" after he began his employment and that he always provides the agreements to be signed in January. Tr. 24-25. When Islam was asked why the date of the arbitration agreement on February 1, 2018 appeared to be over one year after Ortiz began work in November 2016, Islam simply denied that Ortiz had signed two years after he began work. Tr. 25. When asked how the agreement was presented

to Ortiz and if he was present when Ortiz signed the agreement, Quizhbi testified that "[e]verybody get the paper. Everybody sign at the same time. Sometimes I told them, if you don't understand, take it and bring it when it's ready. That's what I say all the time." Tr. 39. With respect to the purported arbitration agreements, Quizhbi testified, "I'm not exactly sure what this is." Tr. 40.

Ortiz testified that he never signed the agreement while working at Zep and that his signature appeared on the arbitration agreement "because they would always make you sign a blank page. It does look a lot like my signature, but it is not a document that I signed." Tr. 75, 83. Ortiz testified credibly that his native language is Spanish, that he speaks only a little English, and that he cannot read or write in English. Tr. 74-75.

**3.**

The plaintiff Eliseo Chavez San Juan was employed by the defendants, ostensibly as a delivery worker, from approximately September 2018 until around May 6, 2019. Am. Compl. ¶ 73.

A purported arbitration agreement exists dated January 1, 2019 that appears to bear the signatures of Chavez and Islam. Dkt. No. 41, Ex. D. Islam testified that Chavez signed the agreement and Islam testified that Quizhbi witnessed Chavez

signing the agreement. Tr. 16. Islam testified that he did not personally see Chavez sign the agreement because he was in the main room of the restaurant at the time and Chavez was in the kitchen. Tr. 22. Quizhbi testified that he does not remember Chavez signing the agreement and that he did not "know [Chavez] much because he worked only a few months with us. So I don't know about this guy much." Tr. 39.

Chavez testified credibly that he does not know how to read or write in English, and only understands a few words of spoken English. Tr. 59. Chavez testified that he signed a document that "had some written paragraphs, but I do not know what it was about" one or two weeks after he left work, which was in May 2019. Tr. 60, 73. Chavez further testified that he was told to sign the document because he "was not going to work there any more and for me to be able to receive my last paycheck." Tr. 70. He testified that a server at the restaurant gave him the document and that he signed the document in order to receive his final check from the server. Tr. 70-71.

## II.

A court considering whether to compel arbitration pursuant to a purported arbitration agreement must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question and if so, (2) whether the particular

8

dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident & Indemn. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (internal quotation marks and alteration omitted). The question whether parties have contractually bound themselves to arbitrate a particular dispute involves an "interpretation of state law." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002) (Sotomayor, J.). Although parties may delegate to the arbitrator questions of arbitrability when they "clearly and unmistakably" agree to do so, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 251 (2d Cir. 2019) (citing Granite Rock Co. v. Int'l Bhd. Of Teamsters, 51 U.S. 287, 299-301 (2010)).

"Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence[.]" Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 700-01 (S.D.N.Y. 2017) (internal citation omitted). Thus, the party seeking arbitration must prove by a preponderance of the evidence that all the elements necessary to form a valid contract are met, namely

9

"offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation marks omitted). "Mutual assent requires, in turn, a meeting of the minds of the parties, and if there is no meeting of the minds on all essential terms, there is no contract." Prince of Peace Enters., Inc. v. Top Quality Food Mkt., 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (quotation marks omitted).

In general, "a party will not be excused from his failure to read and understand the contents" of a contract and thus someone "who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." Shklovskiy v. Khan, 709 N.Y.S.2d 208, 209 (App. Div. 2000). "A person who is illiterate in the English language is not automatically excused from complying with the terms of a contract simply because he or she could not read it. Such persons must make a reasonable effort to have the contract read to them." Holcomb v. TWR Express, Inc., 782 N.Y.S.2d 840, 842 (App. Div. 2004); see also Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 122 (2d Cir. 2010) ("New York courts have repeatedly ruled that even the fact that a prospective employee possessed an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the

document explained to him."); <u>Long v. Amway Corp.</u>, 306 F. Supp. 3d 601, 609 (S.D.N.Y. 2018); <u>Shklovskiy</u>, 709 N.Y.S.2d at 209. But "if the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void." <u>Pimpinello v. Swift & Co.</u>, 170 N.E. 530, 531 (N.Y. 1930).[2]

<u>Pimpinello</u> carves out a narrow exception to the principle that a party is normally bound by a contract that he or she has signed. The party will not be bound by a contract not written in a language in which the party is literate for lack of a meeting of the minds if the party, by no fault of his own, either had the contract misrepresented or the party did not have an opportunity to have the contract translated.

---

[2] It is not entirely clear upon which doctrinal bases the principle announced in <u>Pimpinello</u> rests. There is some support for interpreting the principle announced in <u>Pimpinello</u> as a principle involving fraud, either in the factum or in the inducement. See <u>Tatar v. Elite Gold, Inc.</u>, No. 01-cv-2433, 2002 WL 2031605, at *4 (S.D.N.Y. Sept. 5, 2002); <u>Cont'l Airlines, Inc. v. Lelakis</u>, 943 F. Supp. 300, 305 (S.D.N.Y. 1996), <u>aff'd</u>, 129 F.3d 113 (2d Cir. 1997). Other authority indicates that the principle underlying <u>Pimpinello</u> is the requirement that there be a meeting of the minds in contract formation. See <u>Galeana v. Mahasan Inc.</u>, No. 14-cv-3625, 2019 WL 3024588, at *3 (S.D.N.Y. July 11, 2019). Other authority suggests that it derives from the doctrines of unconscionability and fraud. See <u>Victorio v. Sammy's Fishbox Realty Co.</u>, No. 14-cv-8678, 2015 WL 2152703 at *11 (S.D.N.Y. May 6, 2015). Most persuasive in this case is the authority that discusses <u>Pimpinello</u> in terms of meeting of the minds, because the allegations in this case more properly concern the question whether there was "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." <u>Robison v. Sweeney</u>, 753 N.Y.S.2d 583, 586 (App. Div. 2003) (internal quotation marks omitted).

The motions to compel each plaintiff to arbitrate his claims will be addressed in turn.

**A.**

The evidence is equivocal as to whether Solis ever saw and signed the purported arbitration agreement. His signature appears on the final page of the arbitration agreement which contains no other substantial provisions. On the other hand, Solis denied having signed such an agreement in his testimony and in his sworn affidavit. Moreover, the testimony of Islam and Quizhbi about when and if Solis signed the agreement was vague and general. When asked when Solis signed the agreement, Quizhbi testified, in substance, that he knew Solis signed the agreement because, as a matter of course, every employee signed the agreement. Tr. 37.

Assuming that Solis did in fact sign the arbitration agreement and that the signature page was not later attached to the arbitration agreement, it is plain that he signed the arbitration agreement under circumstances that were sufficiently rushed in the kitchen amidst other employees that he did not recall the specifics.

The circumstances under which Solis signed the purported arbitration agreement, even under the defendants' representations, shows that the defendants have failed to

demonstrate by a preponderance of the evidence that there was a meeting of the minds under Pimpinello. The evidence shows that Solis is illiterate in English. Islam's testimony that Solis understood English was not credible.

Because Solis did not understand the contents of the document he signed, he cannot be bound by the arbitration agreement unless he had a meaningful opportunity to have the document translated. But the evidence shows that Solis was effectively made to sign the agreement in the kitchen when it was presented by Quizhbi, the chef. These circumstances did not give Solis a meaningful opportunity to take the document home with him to have it translated. Cf. Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988) ("The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice. The focus is on the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power.") (citation omitted). In the kitchen, Quizhbi was the person made available to answer employees' questions about the agreement (Tr. 40), but

at the evidentiary hearing Quizhbi himself could not explain what the agreement was. Id.

Taken as a whole the evidence shows that the defendants exploited the close relationship between employer and employee as well as Solis's lack of English literacy to place Solis in a situation in which he would sign the arbitration agreement on the spot without a meaningful opportunity to have the agreement translated. See Loiacono v. Loiacono, 589 N.Y.S.2d 560, 560 (App. Div. 1992) (setting aside a conveyance in which children exploited a confidential relationship with their non-English speaking mother who had signed papers purporting to convey real property); First Nat'l Bank v. Wright, 202 N.Y.S. 774, 780 (App. Div. 1924) (discussing the equitable principle that the acts and contracts of persons who are of weak understanding are void in "all cases where the relation between the parties gives one a controlling influence over the other."), aff'd, 148 N.E. 704 (N.Y. 1925). The defendants testified that employees were always given the opportunity to take the agreements home with them before signing them, but this post hoc boilerplate testimony is not credible and at the evidentiary hearing the defendants did not point to any specific facts that would tend to show that the plaintiffs had a meaningful opportunity to have the documents

translated such that the agreements would be properly formed under Pimpinello.

The circumstances under which Solis signed the agreement distinguish this case from other cases in which courts have enforced agreements notwithstanding allegations that signatories were unable to read the language in which the agreement was written. In Lelakis, the court enforced a guaranty agreement notwithstanding such an allegation, largely because the signatory "knew he was signing a document that imposed some financial liability on him," and the signatory "had several days between the negotiation of the guaranty and signing it." 943 F. Supp. at 306-07. In Galeana, the court enforced arbitration agreements between non-English speaking employees and their employer because the court found that the employees had in fact signed the agreements and there were no allegations that the employees were pressured in any way. 2019 WL 3024588, at *6. Finally, in Sammy's Fishbox, the court enforced arbitration agreements between non-English speaking employees and their employer after analyzing the claims under theories of unconscionability and fraud and also found, importantly, that the "Plaintiffs are capable of conversing in English to a limited extent." 2015 WL 2152703, at *11-15. However, there is no requirement in Pimpinello and its progeny that the party

15

seeking to avoid enforcement of the contract meet the high standards of unconscionability or fraud. The inquiry, instead, is into whether there is a meeting of the minds. Moreover, the plaintiffs in this case, did not have a reasonable opportunity to make an effort to have the agreements translated into English, a fact that the court in Sammy's Fishbox found meaningful. Id. at *15.

Because Solis was illiterate in English and under the circumstances did not have a meaningful opportunity to have the purported agreement to arbitrate translated into Spanish, a valid agreement to arbitrate was not formed and the motion to compel Solis to arbitrate his claims is **denied**.

**B.**

As in Solis's case, the signature page of the purported arbitration agreement between the defendants and Ortiz contains no other part of the arbitration agreement. Ortiz further testified that he was required to sign a blank page and that he did not sign the arbitration agreement. Assuming that Ortiz did sign the arbitration agreement, the defendants failed to show by a preponderance of the evidence that Ortiz did so under circumstances that showed there was a meeting of the minds with respect to that agreement. Quizhbi could not recall the specific circumstances in which Ortiz signed the agreement, but rather

Quizhbi merely repeated his boilerplate testimony that Ortiz, like all employees, signed the agreement in the restaurant kitchen and that Ortiz had the opportunity to take the agreement home with him to be translated. Tr. 39. That testimony about Ortiz's ability to take the agreement home was not credible.

Ortiz, like Solis, is illiterate in English. The evidence shows that, like Solis, Ortiz was made to sign the purported arbitration agreement under circumstances in which he had no meaningful opportunity to have the document translated into Spanish.

The purported arbitration agreement is therefore not enforceable and the motion to compel Ortiz to arbitrate his claims is **denied.**

### C.

The circumstances under which Chavez signed the purported agreement were somewhat different. Although Chavez denied, at various times, that he had signed the purported arbitration agreement, he credibly testified that he signed some document, but only after his employment ended and that he did not recall the contents of the document. Indeed, Chavez recalled signing a document after his employment ended when he came into the restaurant and signed a document in exchange for receiving his last paycheck, which was being held by a server.

The circumstances surrounding Chavez's signing of the agreement are insufficient to find by a preponderance of the evidence that the agreement is enforceable because the evidence indicates that Chavez, who was illiterate in English, had no meaningful opportunity to have the purported agreement translated into Spanish. Rather, he was made to sign the agreement in exchange for receiving his last paycheck and there is no indication that anyone explained to him what he was signing or gave Chavez any indication of the kind of agreement he was signing. The purported arbitration agreement is invalid and the motion to compel Chavez to arbitrate his claims in this case is **denied**.[3]

### III.

Because the motions to compel arbitration are denied, the Court must decide the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] Chavez argues that his arbitration agreement is unenforceable for the additional reason that there was no consideration because he signed the document after his employment ended and in exchange for his last paycheck that was due to him in any event. See Stern v. Espeed, Inc., No. 06-cv-958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006); Fafoutis v. Lyons, 540 N.Y.S.2d 20, 21 (App. Div. 1989) ("A promise to comply with a pre-existing legal duty is not adequate consideration upon which a valid contract may be based."). On the other hand, in certain circumstances, courts have found that mutual promises to arbitrate claims by themselves provide consideration to enforce an agreement to arbitrate. See Marciano v. DCH Auto Grp., 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (collecting cases). It is unnecessary to decide whether the exchange of promises in the arbitration agreement is sufficient consideration because the purported agreement is unenforceable for the reasons explained above.

**A.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. at 678. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced

19

in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## B.

The basis of the defendants' motion to dismiss is narrow. The defendants do not argue that the plaintiffs have failed to plead sufficiently that at least some of the defendants may be liable for violations of the FLSA and the NYLL. Rather, the motion to dismiss is brought only by the defendants 1431 Restaurant, Inc. and Tarek Alam against two of the plaintiffs, Ortiz and Chavez, on the grounds that Ortiz and Chavez have not alleged sufficiently that 1431 Restaurant, Inc. and Tarek Alam exerted operational control over Ortiz and Chavez sufficient to make them liable to Ortiz and Chavez under the FLSA and the NYLL. The defendants further argue that the FLSA claims brought by Ortiz and Chavez are time-barred to the extent they seek to impose liability on the defendants for actions that occurred outside the statute of limitations period for FLSA claims.

**1.**

Tarek Alam moves to dismiss the claims brought by Ortiz and Chavez on the ground that they have not alleged sufficiently that Tarek Alam was their "employer."

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[4] "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA].'" Vasto v. Credico (USA) LLC, No. 15-cv-9298, 2016 WL 4147241, at *4 (S.D.N.Y. Aug. 3, 2016) (quoting 29 C.F.R. § 791.2(a)). Courts determine whether someone is an employer by applying the "economic reality" test in which the Court looks at the four factors laid out in Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984) – "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" – as well as

---

[4] Courts interpret "employer" under the NYLL in the same way they interpret "employer" in the FLSA. See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) (collecting cases). Therefore, the test used to determine whether someone is an employer under the NYLL is the same as under the FLSA and the Court need not discuss the NYLL separately for purposes of this motion.

two additional factors – the operational control exerted over employment and the individual's potential power, even if not exercised, over the employees. Vasto, 2016 WL 4147241, at *4-5.

In the Amended Complaint, the plaintiffs allege that Tarek Alam "is sued individually in his capacity as owner, officer, and/or agent of Defendant Corporations. Defendant Tarek Alam possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees." Am. Compl. ¶ 30. Elsewhere in the Amended Complaint, the plaintiffs repeat the allegation that Tarek Alam possesses an ownership interest in and controls significant functions of the defendant corporations (id. at ¶ 35) and that he operated the defendant corporations as an alter ego of himself (id. at ¶ 40).

The Amended Complaint contains no specific factual allegations about Tarek Alam from which it could be inferred that Alam had the power to hire or fire employees, supervise or control the work schedules of the employees, determine rates of pay, maintain employment records, or otherwise exercise

operational control over the workplace. The Amended Complaint simply recites in conclusory fashion the statutory factors. See Vasto, 2016 WL 4147241, at *6-7 (discussing the sufficiency of allegations that merely plead the economic reality factors on information and belief); Bravo v. Eastpoint Int'l, No. 99-cv-9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (finding that conclusory allegations that an individual "is the principle [sic] owner and chairperson" of an entity is insufficient to establish that that individual meets the economic reality test).

Therefore, Tarek Alam's motion to dismiss claims brought against him by Ortiz and Chavez is **granted without prejudice.**

**2.**

1431 Restaurant, Inc. moves to dismiss claims brought against it by Chavez and Ortiz.

Under the FLSA, multiple corporate entities can be liable on "a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations." Apolinar v. R.J. 49 Rest., LLC, No. 15-cv-8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016). Pursuant to the single integrated enterprise test used to determine whether multiple entities should be treated as a single employer, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management,

and (4) common ownership or financial control." Id. (quoting
Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y.
2014)).

The allegations by Ortiz and Chavez with respect to 1431
Restaurant, Inc.'s status as a joint employer are conclusory and
therefore insufficient to hold 1431 Restaurant, Inc. liable as a
joint employer. The plaintiffs state, without any specific
factual allegations, that the individual defendants "operated
the restaurant as a joint or unified enterprise," (Am. Compl.
¶ 3), that the "[d]efendants are associated and joint
employers," (Id. at ¶ 36), and that the "[d]efendants jointly
employed Plaintiffs (and all similarly situated employees) and
are Plaintiffs' (and all similarly situated employees')
employers," (Id. at ¶ 38). These conclusory allegations are
insufficient to hold 1431 Restaurant, Inc. liable as part of a
single integrated enterprise because the Amended Complaint lacks
any factual allegations that support the conclusions that 1431
Restaurant, Inc. and ZEP LLC had an interrelation of operations,
centralized control of labor relations, common management, or
common ownership and financial control over operations. See
Lopez v. Acme Am. Envt'l Co., Inc., No. 12-cv-511, 2012 WL
6062501, at *4 (S.D.N.Y. Dec. 6, 2012) ("Allegations of common
ownership and common purpose, without more, do not answer the

24

fundamental question of whether each corporate entity controlled Plaintiffs as employees.").

Therefore, the motion of 1431 Restaurant, Inc. to dismiss claims brought by Ortiz and Chavez is **granted without prejudice.**

### 3.

The defendants also seek to dismiss some of the FLSA claims on the ground that the relief sought includes claims outside the statute of limitations. FLSA claims are governed by a two-year statute of limitations unless the violations of the FLSA are willful, in which case the statute of limitations is three years. See 29 U.S.C. § 255(a).[5] Whether a violation of the FLSA is willful is a fact-intensive inquiry not generally capable of being resolved on a motion to dismiss, and therefore plaintiffs may allege willfulness in general terms to avail themselves of the FLSA's three-year statute of limitations. See Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 191-92 (E.D.N.Y. 2015) (collecting cases).

The plaintiffs filed the complaint in this case on May 9, 2019, and thus the defendants will be liable for violations of

---

[5] Claims under the NYLL are governed by a six-year statute of limitations. N.Y. Lab. Law § 198(3). The defendants do not argue that dismissal is warranted of NYLL claims, on statute of limitations or other grounds, except that the defendants argue that the Court should not retain supplemental jurisdiction of the NYLL claims if it dismisses the FLSA claims as time-barred. Because the FLSA claims are not time-barred, as explained below, the Court will continue to retain jurisdiction over the state law claims.

the FLSA that occurred after May 9, 2016 if the violations were willful, and after May 9, 2017 if not. See 29 U.S.C. § 256; Colella v. City of New York, 986 F. Supp. 2d 320, 335-36 (S.D.N.Y. 2013). The plaintiffs have alleged generally that the defendants' violations were willful, which is sufficient at the motion to dismiss stage to avail themselves of the three-year statute of limitations. Therefore, the plaintiffs have alleged sufficiently that the defendants are liable for FLSA violations that occurred after May 9, 2016.

The defendants do not argue that all of the plaintiffs' FLSA claims are time-barred. Indeed, the plaintiffs allege sufficiently that all three worked for the defendants sometime within the statute of limitations period. Rather, the defendants argue that the three-year statute of limitations warrants dismissal of Tarek Alam and 1431 Restaurant, Inc. from this case, because Tarek Alam cased to be the plaintiffs' employer after March 3, 2015 and 1431 Restaurant, Inc. ceased to operate after 2015.

If the plaintiffs had alleged sufficiently that Tarek Alam and 1431 Restaurant, Inc. acted as employers of Chavez and Ortiz at some time, the Court would be unable to determine on this motion to dismiss based on the pleadings when precisely Tarek Alam and 1431 Restaurant, Inc. cased to be involved in the

employment of Chavez and Ortiz. See Fargas v. Cincinnati Mach., LLC, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (discussing the difficulties of resolving a motion to dismiss on statute of limitations grounds when information necessary to resolve that issue does not appear on the face of the complaint). However, as explained above, the Court dismissed claims brought by Chavez and Ortiz against Tarek Alam and 1431 Restaurant, Inc. on the ground that the plaintiffs have not alleged adequately that Tarek Alam and 1431 Restaurant, Inc. were employers of Chavez and Ortiz within the meaning of the FLSA. Because the plaintiffs have failed to plead sufficiently that Tarek Alam and 1431 Restaurant, Inc. were employers of Chavez and Ortiz within the meaning of the FLSA, the plaintiffs have necessarily failed to plead sufficiently that Tarek Alam and 1431 Restaurant, Inc. were involved in the employment of Chavez and Ortiz within the statute of limitations period.

Therefore, the motion to dismiss filed by Tarek Alam and 1431 Restaurant, Inc. on the ground that they did not operate as the employers of Chavez and Ortiz within the statute of limitations period is **granted without prejudice.**

## CONCLUSION

The Court has considered the arguments of the parties. To the extent not discussed, they are either moot or without merit.

The motions to compel arbitration are **denied.** The motion to dismiss is **granted without prejudice** as discussed above. The Clerk is directed to close Docket Nos. 26 and 36.

**SO ORDERED.**

Dated:      **New York, New York**
             **March 24, 2020**       **/s/ John G. Koeltl**
                                      **John G. Koeltl**
                           **United States District Judge**